### 2985.   VARNER *v.* THE STATE.

### 2986.   WELDEN *v.* THE STATE.

### 2987.   SMITH *v.* THE STATE.

### 2988.   COPPEDGE *v.* THE STATE.

### 2989.   WALKER *v.* THE STATE.

These cases are almost identical in their facts with the case of *Griffin* v. *State*, 2 *Ga. App.* 534 (58 S. E. 781), and are fully controlled by the decision in that case.

DECIDED NOVEMBER 29, 1910.

Accusations of gaming; from city court of Griffin—Judge Flynt. October 10, 1910.

*Cleveland & Goodrich*, for plaintiffs in error.

*W. H. Beck, solicitor*, contra.

HILL, C. J.   The plaintiffs in error were convicted of the offense of gaming, and their bills of exceptions raise only the question whether the verdict is contrary to law because without any evidence to support it.   The evidence as applicable to each one of the plaintiffs in error, substantially stated, is as follows:   The sheriff of Spalding county, with two policemen of the City of Griffin, went to the house of one of the defendants, Jim Varner, between twelve and one o'clock at night.   The door was closed and the windows were pulled down and the curtains drawn.   The keyhole was stuffed with paper, and the witnesses could not see what was going on in the house, and could not see any one in the house. They heard a low, mumbling conversation, like several people talk-

ing, and distinguished the expressions, "Come up," and "That's mine," and heard a noise like cards falling on the floor. There was a light in the house. The policemen went around to the front of the house and the sheriff kicked open the door. When the officers entered the house the light was put out, the lamp was on the floor in the center of the room, and two of the defendants were standing in the middle of the room in front of the door. One of the defendants was behind a box. Another was lying upon a bed, but was not asleep, and one was in the chimney. Another jumped through the window, breaking out the lights and sash. Two decks of cards were found in the room, one was stuffed between the mattress, and the other deck was in the overalls of one of the defendants. Several of the defendants had money on their person. One of them had $24 in bills, stuffed in the breast-pocket of his shirt. There were no cards or money on the floor, and there was no box or table in the room, and there was nothing spread on the floor on which to play. Neither of the witnesses could testify whether there was a game in progress, or who was playing in the game if one was in progress. On the way to jail, one of the defendants, Jim Walker, said to the officers, "White folks, you got us this time." One of the men in the house at the time of the raid by the officers, and who appears not to have been indicted, was introduced by the State. He testified that he went to the house about nine o'clock with the defendant Walker, who said he was going there to organize a baseball team. He testified, that Jim Varner was not at home, and that, while there, he (the witness) played cards for money with Ras Ross, Anthony Alexander, Pomp Holliday, and a negro named Smith; that they played about an hour; that none of the defendants on trial were in the game; that two of the defendants were playing checks, another defendant was lying on a bed, and the other defendants were talking. This is all the evidence for the State. The defendants, each being sworn for the other, denied that any of them were playing cards or gambling; they testified that when the sheriff kicked open the door he presented a big pistol, pointed it at them, and frightened them.

Taking the evidence all together, we think it wholly insufficient to convict the defendants of the offense of playing and betting with cards for money. The positive testimony of the State's witness proved that there was a game of cards being played at the

time, and he testified positively that none of the defendants were engaged in the game, but that others who were present were engaged with the witness in a game. Leaving out the testimony of this witness, the circumstances are sufficient to indicate that some sort of a game was being played inside by some of the persons in the room, but this circumstantial evidence is wholly insufficient to show who these persons were. The jury were authoried, if they saw fit, to believe the testimony of the State's witness that a game was going on, and to reject that part of the testimony of the same witness which identified the parties engaged therein; but if the jury did this, they would have been compelled to resort to circumstantial evidence for the purpose of identifying the defendants with the game, and it is manifestly impossible, from the circumstantial evidence introduced by the State, to form any conclusion as to whether the defendants or any one of them were gambling. It is possible that all of them were participating in the game, but, nevertheless, it is not at all unreasonable that some of the men in the room did not take part in the game. The incriminatory admission of one of the defendants, Jim Walker, to the officers, contained in the expression, "White folks, you got us this time," has no probative value whatever as against the other defendants, as the criminal transaction had entirely ended, if it had taken place, and we think it is hardly sufficient to show that the defendant who made the statement intended thereby to admit that he, with the other defendants, was gambling. In view of the strictness of proof which the law requires to convict of a penal offense, and the merciful presumption which protects every one accused of a violation of law, we are constrained to hold that the evidence in this case did not warrant the conviction of these defendants of the offense of gaming. The jury and the trial judge, who saw the defendants and heard their statements and all the testimony, may have seen something in the manner of the defendants and witnesses that led them to give undue weight to the evidence indicating guilt. But this court, after a most careful consideration of the brief of evidence in the record, can see no facts or circumstances of sufficient probative value to justify a conviction. The facts of this case are almost identical with the facts fully set out by Judge Russell in the opinion of this court in *Griffin* v. *State*, 2 *Ga. App.* 534 (58 S. E. 781), and the opinion

.of the court on these facts as announced by Judge Russell is controlling as to these cases. See also *Cox* v. *State, 7 Ga. App.* 22 (65 S. E. 1062). *Judgment reversed.*

POWELL, J. I dissent. See *Pacetti* v. *State, 82 Ga.* 297.